IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 22-cv-00192-RM-KLM

KAVKAZ EXPRESS, LLC,

   Plaintiff,

v.

ENDURANCE WORLDWIDE INSURANCE LIMITED,

   Defendant.

_____

**ORDER**
_____

   This insurance lawsuit is before the Court on Defendant's Motion for Summary Judgment and Motion to Strike.  (ECF Nos. 53, 71.)  The Motions have been fully briefed.  (ECF Nos. 57, 69, 75, 81.)  For the reasons below, the Motion for Summary Judgment is granted in part and denied in part, and the Motion to Strike is denied.

**I.     BACKGROUND**

   Except as explained below, the material facts are not disputed.  Plaintiff sought coverage on three different claims under its motor truck cargo legal liability policy issued by Defendant.  The claims arise out of Plaintiff's transportation of berries, tomatoes, and chicken in 2019 and 2020 by three different drivers.

   The policy provides "loss or damage" coverage for "all risks of direct physical loss of or direct physical damage to lawful *cargo*, from an external cause."  (ECF No. 54-2 at 25.)  As pertinent here, the policy contains a "spoilage" exclusion for "[l]oss or damage to *cargo* caused

by spoilage, contamination, deterioration, freezing, rusting, water exposure in any form, electrical and/or mechanical failure or breakdown, and/or damage to refrigerated and/or temperature[-]controlled cargo unless caused by or resulting from one or more *named perils*." (*Id.* at 26.)  The policy defines "named perils" to include: "[f]ire, lightning, or explosion"; "[a]ccidental collision of the *truck* with any other vehicle or object"; "[o]verturning of the *truck*"; "[c]ollapse of bridges or culverts"; "[f]lood (meaning rise of streams or navigable waters)"; "[c]yclone, tornado, hurricane, hailstorm or windstorm"; "[t]heft"; and "[s]tranding, collision, burning, grounding or sinking of a ferry while the *truck* is on board."  (*Id.* at 23.)

The policy also contains a "loss of market" exclusion for "[l]oss of market, delay, loss of use, clean[-]up costs or any remote or consequential loss."  (*Id.* at 26.)  This exclusion does not include an exception for loss or damage caused by or resulting from named perils.

In addition, the policy affords no coverage unless the driver "has continuously held a driver license issued in the United States or Canada which is valid for the automobile involved for at least twenty[-]four (24) months immediately prior to operations for which cover is required under this policy."  (ECF No. 54-2 at 21.)

Regarding the berries claim, Plaintiff's assigned driver picked up two loads of berries in Texas on December 14, 2019.  (ECF No. 70, ¶ 11.)  The berries were scheduled for delivery in Ohio and Michigan on December 16.  (*Id.* at ¶ 12.)  The berries had yet to be delivered when the customer terminated the order on December 17.  (*Id.* at ¶ 13.)  In its letter explaining why it was denying coverage, Defendant cites both the "spoilage" and "loss of market" exclusions.  (*Id.* at ¶ 39.)  The letter also states that by stating the reason for non-payment, Defendant did not intend to waive any of its rights or defenses under the policy, which it may then have had or might

2

discover in the future.  (*Id.*)

Regarding the tomatoes claim, Plaintiff's assigned driver, Ulan Narkeev, picked up two loads of tomatoes in Texas on January 10, 2020.  (*Id.* at ¶¶ 19, 22.)  The tomatoes were scheduled for delivery in New York on January 13 but were not delivered until four days later.  (*Id.* at ¶¶ 22, 23.)  The customer did not reject the delivery but made a claim against Plaintiff for loss of orders.  (*Id.* at ¶¶ 24, 25.)  In its letter denying coverage, Defendant cites the same exclusions and includes the same reservation of rights as with the berries claim.  (*Id.* at ¶ 46.)

Regarding the chicken claim, Plaintff's assigned driver, Daniel Taranov, picked up two loads of chicken in Pennsylvania and Delaware on January 31, 2020.  (*Id.* at ¶¶ 29, 30.)  The chicken was scheduled for delivery in Wisconsin on February 1 but upon arrival was rejected by the customer, which made a claim against Plaintiff.  (*Id.* at ¶¶ 29, 33, 34.)  In its letter denying coverage, Defendant cites the same two exclusions as well as a third pertaining to "[l]oss of damage to *cargo* caused by or resulting from mildew, moth, vermin, insufficiency of insulation or packing, failure to comply with the requirements of a Bill of Lading, *shipper's invoice* or manifest such as the necessity for straps or load locks, wear, tear, gradual deterioration, or natural loss in weight or volume."  (ECF No. 57-16 at 3.)  The letter includes the same reservation of rights.  (*Id.*)

Defendant's denials prompted Plaintiff to file this lawsuit.  Plaintiff brings claims for breach of contract, unreasonable delay or denial of benefits under Colo. Rev. Stat. §§ 10-3-1115 and -1116, and bad faith.  Defendant has moved for summary judgment and to strike three affidavits Plaintiff submitted with its Response to Motion for Summary Judgment.

## II.     LEGAL STANDARDS

### A.     Summary Judgment

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018).  Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in its favor. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013).  However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"The substantive law of the case determines which facts are material."  *United States v. Simmons*, 129 F.3d 1386, 1388 (10th Cir. 1997).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law.  *Id.* at 251-52; *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).

Where the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment bears the initial burden of showing an absence of any issues of material fact.  *See Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 994 (10th Cir. 2019).  If the

4

moving party demonstrates that the nonmoving party's evidence is insufficient to establish an essential element of its claim, the burden shifts to it to set forth specific facts showing that there is a genuine issue for trial. *See id.* If it fails to make a showing sufficient to establish the existence of an element, summary judgment must be entered in favor of the moving party. *See id.*

    B.    **Motion to Strike**

Pursuant to Fed. R. Civ. P. 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The Court has discretion to determine whether a discovery violation is justified or harmless and is guided by the following factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

**III.    ANALYSIS**

    A.    **Defendant's Motion for Summary Judgment**

Defendant seeks dismissal of Plaintiff's breach of contract claim on the basis the policy does not afford coverage for its claims. It further argues that Plaintiff's other claims should be dismissed because they are premised on its liability under the policy. The Court concludes that Defendant is entitled to summary judgment on Plaintiff's claims stemming from the berries and tomatoes deliveries but not the chicken delivery.

5

Under Colorado law, the insured bears the initial burden of demonstrating coverage under the policy. *Rocky Mountain Prestress, LLC v. Liberty Mut. Fire Ins. Co.*, 960 F.3d 1255, 1260 (10th Cir. 2020). Once an insured demonstrates a loss to property covered by an all-risk policy, the insurer has the burden of proving that the proximate cause of the loss was excluded by the policy language. *Leprino Foods Co. v. Factory Mut. Ins. Co.*, 453 F.3d 1281, 1287 (Colo. 2006). "To obtain the benefit of an exclusion, an insurer must establish that the exclusion applies and is not subject to any other reasonable interpretation." *Id.* If the insurer satisfies its burden, the burden shifts to the insured to show that an exception to the exclusion applies. *Id.*

1. Berries Claim

Defendant first argues there is no coverage for the berries claim because Plaintiff has failed to adduce admissible evidence demonstrating coverage under the policy, i.e., direct physical loss or damage to cargo. It is undisputed that the customer rejected the berries without inspecting them (ECF No. 70, ¶ 14), and Plaintiff has not presented any evidence that the driver or anyone else did so. In the absence of direct evidence of physical loss or damage, Plaintiff posits that because berries are perishable and naturally deteriorate over time, "[a] reason for [the] order being rejected was the delay probably caused the deterioration of perishable goods, decreasing their shelf life, and resale value." (*Id.*) But mere conjecture that a delay of one or two days caused more than de minimis physical loss or damage is insufficient to raise a genuine issue of material fact for trial. Conspicuously lacking is any evidence that the customer terminated the order because it perceived the berries had deteriorated. Thus, on the current record, the Court cannot conclude that Defendant acted improperly by denying the berries claim as it was not supported by evidence of physical loss or damage.

Moreover, even if there were coverage under the policy, the policy's "spoilage" exclusion would bar Plaintiff's claim because Plaintiff has failed to adduce evidence that any deterioration was caused by a named peril. Citing a statement by the driver, Plaintiff contends that one of the tires blew out after the truck was loaded by the shipper. (ECF No. 57-5 at 4.) Having found the tires to be in good condition before departing, the driver stated: "I believe an object in the road probably punctured the tire, causing it to blow out." (*Id.*) After the tire was repaired, the driver later discovered that "[t]he tire caused additional damage to the fuel tank skirts and hoses," and he "was forced to stop again for repairs." (*Id.*) But the Court finds these speculative assertions are insufficient to implicate the named peril of an "[a]ccidental collision of the *truck* with any other vehicle or object." "An insurer's decision to deny benefits to its insured must be evaluated based on the information before the insurer at the time of that decision." *Peiffer v. State Farm Mut. Auto. Ins. Co.*, 940 P.2d 967, 970 (Colo. App. 1996). Plaintiff fails to show how the driver's assertions would have put Defendant on notice that this exception to the exclusion might apply.

The Court also rejects Plaintiff's underdeveloped assertion that the blown tire might implicate the named peril of an "explosion." There is no evidence that the parties intended to incorporate into the policy such an expansive interpretation of the word "explosion," and courts enforce the intent and reasonable expectations of the parties to an insurance policy as expressed in the policy's plain language, giving each word its ordinary meaning. *Owners Ins. Co. v. Dakota Station II Condo. Ass'n, Inc.*, 443 P.3d 47, 51 (Colo. 2019). Accordingly, the Court finds there is no evidence that a named peril caused spoilation of the berries, and therefore the "spoilage" exclusion bars Plaintiff's claim.

The policy's "loss of market" exclusion provides an additional basis on which Defendant could have properly denied coverage. The exclusion expressly precludes coverage for "delay" and "any remote or consequential loss," and, as noted above, it does not incorporate the exception for named perils that applies to the "spoilage" exclusion. Plaintiff has provided no coherent argument as to why this exclusion should not apply.

For these reasons, the Court finds that Defendant's denial of the berries claim was not improper.

### 2. Tomatoes Claim

Defendant argues there is no coverage for the tomatoes claim because the driver, Mr. Narkeev, did not meet the policy's requirement of having an applicable driver's license for at least twenty-four months prior to either the inception of the policy or his date of hire. Although there is evidence that Mr. Narkeev was issued a commercial driver's license ("CDL") on November 5, 2019, the clear terms of the policy bar coverage unless he had such a license in January 2018. In its Response to the Motion, Plaintiff argued that Mr. Narkeev had multiple CDLs, citing a statement in an affidavit by Mr. Narkeev without any corroborating evidence. However, in its Response to Defendant's Motion to Strike, Plaintiff withdrew that statement, stating that "Mr. Narkeev probably made a mistake about the year he first received a CDL." (ECF No. 75 at 8.) Plaintiff has adduced no other evidence that Mr Narkeev satisfied driver's license requirement when this claim was made. In the absence of such evidence, there is no genuine issue as to whether Defendant improperly denied the tomatoes claim.

Plaintiff makes two arguments as to why the tomatoes claim should nevertheless not be barred. First, it contends that Defendant failed to raise this issue in its correspondence with

8

Plaintiff preceding the filing of this lawsuit.  But, as explained above, Defendant clearly reserved its rights and defenses with respect to this claim.  (*See* ECF No. 57-11 at 3.)  Plaintiff cites *Peiffer*, 940 P.2d at 970, for the proposition that "[w]hen an insurer denies coverage on a particular basis, other possible reasons for coverage denial are waived."  (ECF No. 57 at 13.)  However, the case does not support such a broad reading.  Indeed, the *Peiffer* court merely concluded that the district court erred by ruling that the insurer had waived the right to present testimony from an expert witness when it failed to specifically mention the witness in its coverage denial letter.  940 P.2d at 970.  Thus, the Court finds that Defendant did not waive the right to deny coverage based on the driver's license requirement.  Such a rule would make little sense under circumstances like the ones here, where the insurer reasonably believes that it has ample other grounds for denying a claim.  Requiring a full investigation as to all other possible bases for denial would be redundant and unnecessary in many cases.

Moreover, contrary to Plaintiff's assertion, this case is distinguishable from *Schultz v. GEICO Cas. Co.*, 429 P.3d 844, 849 (Colo. 2018), where the insurer sought "a *new* medical examination, with the apparent intention of introducing such post-coverage-decision evidence to establish the reasonableness of its earlier coverage decision."  Instead, Defendant is merely pointing out the absence of any evidence that a condition precedent to finding coverage under the policy has been satisfied.  Because Defendant is not seeking to create new evidence in support of its denial, *Schultz* is not on point.

Second, in its Response to the Motion to Strike, Plaintiff contends that a jury could find that even if Mr. Narkeev did not satisfy the requirement, a jury could nevertheless conclude that it substantially complied with the terms of the policy.  (ECF No. 75 at 9.)  But Plaintiff did not

9

raise this argument in its Response to the Motion for Summary Judgment. Further, the terms of the driver's license requirement are not ambiguous, and where a policy provision is not susceptible to more than one reasonable interpretation, the Court's obligation is to give effect to that meaning. *See BonBeck Parker, LLC v. Travelers Indem. Co. of Am.*, 14 F.4th 1169, 1176-77 (10th Cir. 2021); *see also Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003) ("In undertaking the interpretation of an insurance contract, courts should be wary of rewriting provision, and should give the words contained in the contract their plain and ordinary meaning, unless contrary intent is evidenced in the policy.").

Therefore, the Court finds there is no evidence raising a genuine issue for trial as to whether Plaintiff satisfied the driver's license requirement—a condition precedent to affording coverage.

Further, the policy's "loss of market" exclusion provides an additional basis on which Defendant could have properly denied coverage on the tomatoes claim. The exclusion expressly precludes coverage for "delay" and "any remote or consequential loss." And once again Defendant has provided no compelling reason why this unambiguous exclusion should not apply.

Accordingly, there is no genuine issue as to whether Defendant improperly denied the tomatoes claim.

       3.    <u>Chicken Claim</u>

Defendant argues there is no coverage for the chicken claim because the driver, Mr. Taranov, did not meet the policy's driver's license requirement. In discovery, Plaintiff produced a Florida driver's license report for Mr. Taranov indicating a "CDL original issue date" of February 5, 2018, which is less than two years before the claim arose. (ECF No. 75-7 at 2.)

10

The report also indicates that Mr. Taranov had a "previous license" from New York and identifies the license number as 704808903 but provides no date. (*Id.*)  With its Response to the Motion for Summary Judgment, Plaintiff filed an affidavit by Mr. Taranov stating as follows: "From at least 2015 to the present, I have consecutively held a commercial driver's license (CDL).  Starting in approximately 2015, I held a CDL in the state of New York that expired on April 30, 2019, license number 704 808 903."  (ECF No. 57-18 at 1.)

As discussed below, the Court is denying Defendant's request to strike the affidavit.  The Court further finds that the affidavit is sufficient to raise a genuine issue of material fact as to whether the driver's license requirement was satisfied with respect to this claim.  Defendant has asserted no other argument as to why it is entitled to summary judgment on the chicken claim; therefore, the Court denies the Motion for Summary Judgment as it pertains to this claim.

B.     **Defendant's Motion to Strike**

Defendant's Motion to Strike is largely moot in light of the Court's conclusions that, even if the challenged affidavits are considered, Defendant is entitled to summary judgment on the berries and tomatoes claims.  As pertinent to the chicken claim, Defendant argues that the Taranov affidavit should be stricken because it was untimely disclosed and improper.  He also argues that it is inadmissible.

To the extent Defendant seeks to exclude the affidavit as a discovery sanction for Plaintiff's failure to disclose sufficient information about Mr. Taranov's New York CDL, the Court is not persuaded that the harsh sanction of exclusion is warranted.  Defendant had the driver's license report indicating that Mr. Taranov had a previous license from New York, so it should not have found his statement unduly surprising.  The Court expects that any prejudice

11

caused by the late disclosure can be resolved at trial, which is not scheduled to begin until March 2024. And because the information inures to Plaintiff's benefit—i.e., demonstrating compliance with a condition precedent to affording coverage—the circumstances suggest that while Plaintiff could have perhaps been more rigorous in meeting its discovery obligations, it did not act in bad faith. Accordingly, the Court declines to exclude the affidavit.

Nor does the Court find exclusion to be appropriate because the affidavit is inadmissible and uncorroborated by documentary evidence. Although documentary evidence about Mr. Taranov's New York CDL would have been preferable, that is not to say that his sworn statement on the topic cannot be admitted. Rather, it is enough to raise a factual issue for a jury. Therefore, the Court denies Defendant's request to strike the Taranov affidavit.

**IV.  CONCLUSION**

Therefore, the Court ORDERS as follows with respect to the pending Motions:

(1) Defendant's Motion for Summary Judgment (ECF No. 53) is GRANTED IN PART and DENIED IN PART, as stated in this Order, and

(2) Defendant's Motions to Strike (ECF No. 71) is DENIED.

DATED this 20th day of July, 2023.

BY THE COURT:

RAYMOND P. MOORE
Senior United States District Judge